[PHILADELPHIA, MARCH 27, 1829.]

## CALDWELL, Administrator of CALDWELL, surviving Partner of HOLMES, *against* STILEMAN.

### IN ERROR.

Though, in an action against the representatives of a deceased partner, the evidence of the insolvency of the surviving partner be not satisfactorily proved, yet if it be sworn to, and the defendant demur to the evidence, it must be taken as proved.

If a contract be made with a firm, to do a certain piece of work, which is not finished until after the death of one of the partners, the estate of that partner is liable, provided the surviving partner be insolvent.

Though on a demurrer to evidence, judgment will not be given if the declaration set forth an illegal cause of action, or no cause of action, yet it waives all objections merely formal; and what would be cured by a verdict, is cured by a demurrer to evidence.

WRIT of error to the District Court for the city and county of *Philadelphia*.

*Richard Stileman*, the defendant in error and plaintiff below, brought this action against *John Caldwell*, administrator of *Alexander Caldwell*, deceased, who in his lifetime, traded in partnership with *John Holmes*, under the firm of *Holmes* and *Caldwell*.

The suit was brought to *March* Term, 1825, and the declaration, which contained an averment of the insolvency of *John Holmes*, was for work and labour done and performed for the firm of *Holmes* and *Caldwell*, in the lifetime of the said *Alexander Caldwell*. The plaintiff claimed the sum of one hundred and seventy dollars

(Caldwell, Administrator of Caldwell, surviving partner of Holmes and Caldwell, v. Stileman.)

and thirteen cents, which included work done and delivered before the death of *Alexander Caldwell*, as well as work done and delivered to *John Holmes*, after the death of *Caldwell*.

The case, as disclosed by the evidence given at the trial, was briefly as follows:—

In the autumn of the year 1824, *Holmes* and *Caldwell* entered into partnership in the business of making machinery for manufactories of cotton and wool. They made an agreement with *Richard Stileman*, the plaintiff below, who was a blacksmith, to make all the iron work for their machinery, for twelve and a half cents per pound. About the 14th of *September*, 1824, *Holmes* and *Caldwell*, entered into a contract with *Bernard M'Credy*, to make for him a stretcher, which was to be finished in six weeks or two months, and in case of delay in delivering the work, a penalty was imposed by the agreement. *Stileman* was employed to do the iron work for the stretcher. It was proved by one witness, that *Caldwell* went to *Stileman*, and urged that the shafts, &c., of a horse mill should go on as quickly as possible, as he wanted him to go to work at the stretcher; and *M'Credy* testified that *Caldwell* told him he had employed *Stileman* to do the iron work for the stretcher. Part of the work for the horse mill was sent to *Holmes* and *Caldwell's* manufactory in the lifetime of *Caldwell*. None of the work for the stretcher was sent there until after his death, nor was there any proof that *Stileman* had begun to work at it when *Caldwell* died. From his own books it seemed that he had not.

*Caldwell* died on the 6th of *October*, 1824, and *Stileman* knew of his death.

*Holmes* carried on the business for sometime after the decease of *Caldwell*, and gave *Stileman* an order on *M'Credy*, dated the 17th *November*, 1826, to pay him for the iron work of the stretcher, made by *Holmes* and *Caldwell*. This order *M'Credy* refused to accept, because it was not signed by *Holmes*, as surviving partner. He offered to accept it if this were done, but it was not done. It was sworn by one witness that *Holmes* became insolvent soon after *Caldwell's* death; and by another, (*M'Credy*,) that he made an assignment, but at what time, was not stated. *M'Credy* paid the assignees for the stretcher.

It appeared from the record, that on the 15th of *February*, 1825, *Holmes* gave bond to appear at the next court, &c., to take the benefit of the insolvent laws.

From *Stileman's* books, which were given in evidence, it appeared that the work for the horse mill was begun on the 13th of *September*, 1824, and finished on the 20th of *November*, 1824. It amounted, in the whole, to eighty dollars and thirty-seven and a half cents. On a different page was an entry of iron work for *M'Credy*, to the amount of ninety-four dollars and eight cents, beginning on the 13th of *October*, and ending on the 13th of *Decem*-

(Caldwell, Administrator of Caldwell, surviving partner of Holmes and Caldwell, *v.* Stileman.)

*ber*, 1824. In another page, what was called the "Jobbing Account," beginning on the 17th of *September*, and ending on the 20th of *October*, 1824, amounting to thirty dollars and ninety-three cents, was charged to *John Holmes*. In another page, another account to the amount of five dollars and thirty-six cents, beginning on the 21st of *December*, 1824, and ending on the 10th of *January*, 1825, was also charged to him. Credits were entered on the 5th of *November*, 1824, and at sundry times afterwards, to the amount of forty dollars and sixty-three and a half cents.

When the plaintiff had closed his case, the defendant demurred to the evidence. The plaintiff joined in the demurrer; and the jury assessed damages, conditionally, for the whole of the plaintiff's demand. The court below gave judgment for the plaintiff.

In this court, the following specifications of error were filed:

*First*, Because there is not in the evidence demurred to, such proof of the insolvency of *John Holmes*, the surviving partner, as to entitle the plaintiff to maintain his suit against the administrator of the deceased partner, at the time and in the manner the suit is brought.

*Second.* Because the dealings of the plaintiff with *John Holmes*, the surviving partner, after the death of *Alexander Caldwell*, in doing new work and delivering to him work contracted to be done before the death of *Alexander Caldwell*, form a bar to the present suit.

*Third.* Because, under the declaration filed and issue joined, the plaintiff cannot recover for any work done and performed after the death of *Alexander Caldwell*.

*Bradford*, for the plaintiff in error.

1. The evidence of the insolvency of the surviving partner was not sufficient. He had made a general assignment and given bond for the purpose of taking the benefit of the insolvent laws, but he does not appear ever to have carried that purpose into execution. This is not sufficient evidence of insolvency to maintain an action against the surviving partner. It is settled in *Pennsylvania* and in *England*, that where the surviving partner is insolvent, the creditor has a remedy against the representatives of the deceased partner; but the insolvency required must be actual, positive, and legal. It must be averred and proved, that he has been discharged by an insolvent or bankrupt law. The creditor has no equitable remedy against the representatives of the deceased partner, until he has exhausted all legal remedies against the survivor. *Lessee of Ross* v. *Eason*, 4 *Yeates*, 54. *Duerhagen* v. *The United States Ins. Co.*, 2 *Serg. & Rawle*, 185. *Lessee of Maus* v. *Montgomery*, 11 *Serg. & Rawle*, 329. *Bank of the United States* v. *Smith*, 11 *Wheat.* 171. 15 *Johns.* 57. *Heath* v. *Percival*, 1 *P. Wms.* 682. *Storer* v. *Herncliff*, Conn. *Rep.* 147. *Daniel* v. *Cross*, 3 *Ves. jr.* 277. *Gray* v. *Chiswell*, 9 *Ves. jr.* 125. *Van Reimsdyke* v. *Kane*, 1

(Caldwell, Administrator of Caldwell, surviving partner of Holmes and Caldwell, *v.* Stileman.)

*Gall.* 385.   *Lang* v. *Keppele*, 1 *Binn.* 123.   *Marshall* v. *De Groot*, 1 *Caines' Ca. in Er.* 122.   *Lewis* v. *Culbertson*, 11 *Serg. & Rawle*, 48.

2. The dealing between the plaintiff and *Holmes* after the death of *Caldwell* formed a separate contract, under which the representatives of the deceased partner could not be charged.   The general agreement to work at a given rate, was rescinded by the dissolution of the partnership, which was the consequence of the death of one of the partners, except as to work actually begun under that contract.

3. The declaration being only for work done before the decease of *Caldwell*, no judgment could properly be given for what was performed after that event.   ·

*Dallas*, for the defendant in error, (who, on the first point, was stopped by the court,) answered, that the contract with the plaintiff was entire, and could not be divided.   It related to the iron work of all jobs that were to be finished by the firm after the death of one of the partners.   He was to be the smith of the firm, so long as it had such work to do.   The work was in progress, and part of it executed before the death of the deceased partner.   He cited 2 *Powell on Cont.* 56.   *Gow on Part.* 437, 440, 460.   *Hammersly* v. *Lambert*, 2 *Johns. Ch. Rep.* 508.   *Daniel* v. *Cross*, 3 *Ves. jr.* 279.

HUSTON, J., (after stating the facts,) delivered the opinion of the court, as follows:—

1. As to the insolvency of *Holmes*, the proof is not very satisfactory.   But one witness says, he became insolvent; another, that he assigned, and the record showed that he had applied for the benefit of the insolvent acts.   This suit was instituted by writ returnable to the term at which he was to be heard as an insolvent.   The narr states, that he had become insolvent, and was totally unable to pay, &c.—issue might have been taken on this.   ·

The evidence, as offered, might some of it, have been objected to, but was not.   Instead of parol evidence that he assigned, the assignment must have been produced.   A bill of exceptions to evidence offered, brings up the question of the legality and competency of the evidence.   If the evidence is admitted without objection, and there is a demurrer to it, this admits that the evidence was legal, competent, and true, and brings up only the effect of it on the right: every fact sworn to, or shown by written documents, is admitted to be true; and every fair inference from what is given in evidence, is to be taken as proved.   Now, it was expressly sworn that he was insolvent.   It was truly said by the late Chief Justice, that he who demurs to evidence, has an up-hill business of it.

I admit fully, that before the estate of a deceased partner can be made liable, it ought to appear that the surviving partner was unable

(Caldwell, Administrator of Caldwell, surviving partner of Holmes and
Caldwell, *v.* Stileman.)

to pay, and I would not advise a verdict for the plaintiff, until he
had given pretty full evidence of it.    I think a jury ought to pre-
sume against inconclusive and defective proof, if fuller and more sa-
tisfactory evidence was possible.    The representatives of a deceased
partner cannot meddle with partnership property, or collect the cre-
dits, until the debts are paid.    The fund is by law appropriated to
creditors of the firm, and they ought to show that it is exhausted
before they resort to the individual estate of a deceased partner.

But in this case we must take it to have been proved.

2. A partnership may be dissolved by the parties themselves,
or in some cases by one of them—by the bankruptcy of one, or by
the death of one.    There is, in some respects, a difference as to the
effect of a dissolution in the different ways.    We have here to
consider only of one, a dissolution by the death of a partner; and
this of itself works a dissolution, and so entirely, that want of no-
tice of it does not have the effect of making the estate liable to debts
contracted by surviving partners, or for their misconduct.    This
has been complained of, reconsidered, and I consider it settled, and
rightly settled; but, from the nature of the transactions of men, and
from the uncertainty of the time when one may die, (or the partner-
ship be dissolved in some other way) contracts may be made, and
engagements entered into, which are not complied with at the disso-
lution; and, for the purpose of making good these engagements, the
partnership must have a legal continuance, though determined as be-
tween themselves, for every other purpose.    Under what particular
circumstances and by what particular engagements it will be so con-
tinued, and to what effect, even after the death of one partner, is
not easy to define.    The wisest judges have not been able to esta-
blish any universal rule; and the more there is known of the busi-
ness of this life and the diversity of engagements, so much more
strongly will the difficulty of any general rule without exception,
strike the mind.

As to a specific contract to do a particular thing, there is no dif-
ficulty.    I incline to think that generally, a continuing agreement,
to do all work of a certain description, to deliver all flour, or whis-
key, or cotton, or tobacco, &c. &c., is not within the rule, for if it
were, the survivors could continue the partnership as long as they
could get the old hands to work, or old customers to continue deal-
ing; in such cases all work done on orders not given in the life-
time of the deceased—all articles delivered after his death must ge-
nerally be considered as chargeable to the survivors only.    The in-
terest of the deceased is fixed by the state of affairs at his death, or
at most, when contracts, at his death, are completed.    An agree-
ment to do a particular job, may bind the estate of the deceased,
but not an agreement to do all work, all jobs, at the same rate.    This
would keep the estate of the deceased liable for years.    If it cannot be
held liable for years, we can fix no time except death, and engage-

(Caldwell, Administrator of Caldwell, surviving partner of Holmes and
Caldwell, *v.* Stileman.)

ments then specific.   In this case the evidence is, that *Caldwell*, in
his lifetime intimated to *Stileman*, he was to do this work: at ano-
ther time he urged him to expedite the work of the horse mill, that
he might begin this; and he told *M'Credy*, *Stileman* was to do it.
There was no error in including this in the verdict.   The horse mill
was clearly begun in *Caldwell's* lifetime: as to the job work, this
is before us uncertain.   The extract from the books is so short, we
do not see it as fully as the court and jury who had the books—it
is all charged to *J. Holmes*.   We have no evidence that any of it
was ever chargeable to the firm, or is now chargeable on defendant;
but the credits would seem to be all entered to this account, and ex-
ceed the debits.   There is then, no injury to the plaintiff in error
by taking in this.

3. The third objection remains to be considered.   It is true that on
this declaration the plaintiff could not have given evidence of work
done after *Caldwell's* death, but it was permitted to be given with-
out objection.   It was then contended that in no event was *Cald-
well's* estate liable for this: it was found that for work contracted
for in his lifetime, his estate is liable, and then exception is taken
that the *allegata* and *probata* do not agree.   It is too late.   I do
not say that on a demurrer to evidence we will so far disregard the
pleadings as to give judgment when the narr states no cause of ac-
tion, or an illegal cause.   But, I do say, and all the cases warrant me
in saying, that it waives all objections merely formal, and what
would be cured by a verdict is waived by a demurrer to evidence.
What is contended for here would make it a demurrer to the narr,
a bill of exceptions to testimony, a motion for a new trial, and a
motion in arrest of judgment.   Now, it is neither of the three first,
and after a decision of court on the law, as arising on the facts, it
can never be the last, except as I said, in case of a total and radi-
cal defect.

Judgment affirmed.