A. N. LAWRENCE and others, executors of A. H. Lawrence deceased, *appellants, vs.* THE TRUSTEES OF THE LEAKE AND WATTS ORPHAN HOUSE, IN THE CITY OF NEW-YORK, *respondents.*

A creditor of a copartnership, one member of which has died, cannot sustain a suit in chancery against the representatives of the deceased partner, without averring and proving that the surviving members are insolvent.

When a suit is sustainable against such representatives, the bill may be filed at any time within *ten* years after the right to relief accrued, the limitation in such cases being that prescribed by 2 *R. S.* 301, § 52.

And where the surviving partner is solvent at the death of the decedent, and afterwards fails, the ten years allowed for filing a bill to reach the. assets of the deceased partner commences at the time of such failure.

Whether a suit in chancery against the representatives of the deceased partner, brought after the statute of limitations had barred the action at law against the survivor, can be sustained. *Quere.*

Where money is loaned at less than the legal rate of interest, but the contract of lending is indefinite as to the length of credit, and after the death of the lender the borrower denies the debt and conceals the evidence of it ; he *is* chargeable with interest at the legal rate from the time of such denial and concealment.

The effect of statutes of limitations upon existing causes of action examined, and the cases cited and commented on-by the assistant vice chancellor in the court below

ON appeal from the court of chancery. Herman Le Roy, as surviving executor of John G. Leake deceased, filed his bill in the court of chancery against the appellants, as executors of Augustine H. Lawrence deceased, to recover the amount of about fifty thousand dollars together with the interest thereon for several years, which debt, as the complainant alleged, was due to his testator from the firm of Augustine H. Lawrence & Company; which consisted of Augustine H. Lawrence and his son Augustine N. Lawrence, one of the appellants.

The bill alleged that a recovery at law had been had against A. N. Lawrence as survivor of A. H. L., that an execution thereon had been returned unsatisfied, and that A. N. L. was insolvent. The defendants in their answers insisted that A. N. L. was not a copartner in fact, that no such debt as alleged existed, and they relied upon the several statutes of limitations They admitted assets sufficient to pay any demand which the complainant might establish. The complainant replied, and testimony on both sides was taken.

The evidence to prove the partnership between the Messrs. Lawrence, and that relating to the existence of the debt, does not present any important questions of law. The facts raising the questions upon the statute of limitations are as follows :

Leake, the complainant's testator, died June 2d, 1827, and the proof of his will was contested before the surrogate of New-York, but it was admitted to probate by him September 12, 1827. The chancellor, on appeal to him, reversed the surrogate's determination, but the court of errors, in January, 1830, reversed the decree of the chancellor and affirmed that of the surrogate. While the matter was pending before the surrogate, S. Miller was appointed administrator *ad colligendum ;* but after the will was proved John Watts received letters of administration *pendente lite,* and after the decision of the court of errors, letters testamentary were issued to Watts and LeRoy in the usual form. A. H. Lawrence & Co. were the brokers and bankers of Leake, and in that character were accustomed to receive his interest and dividends and other moneys, and to invest for him in stocks, securities, &c. These transactions continued until the death of Leake, and there was an entry to his credit on the 1st June, 1827, the day before he died. When called on by Miller, pending the litigation before the surrogate, A. H. Lawrence, the principal partner, denied that the firm was indebted to Leake in any considerable sum, and exhibited an account showing an indebtedness from them of only about $500, and denied the existence of the *pass book* afterwards mentioned. A. H. Lawrence died September 10th, 1828, after which a *pass book* was found among his private papers, which had belonged

to Leake and which revealed the fact that on the 19th of April, 1826, there was a balance due to Leake from A. H. Lawrence & Co. on account, of above $55,000 ; and that by an understanding between the parties the sum of $50,000 was regarded as a loan, and was on interest at 5 per cent. from 1st July, 1826. The balance beyond the $50,000 appears to have been subsequently paid. The suit at law against A. N. Lawrence was commenced April 1, 1830. During its pendency the plaintiffs filed a bill for the discovery of the existence and contents of the pass book, &c.; and judgment was finally obtained the 23d of March, 1838, for the $50,000 and interest. A. N. Lawrence failed in 1834. The bill of complaint in the present suit was filed June 30, 1838.

Pending this suit, the complainant Le Roy, who was the sole surviving executor of Leake, died, and " The Trustees of the Leake & Watts Orphan House in the city of New-York" having, under the will of Leake, succeeded as parties in interest to the claim in controversy, the legislature by an act passed April 27th, 1841, (*Stat.* 1841, *p.* 107,) authorized the suit to be revived in the name of that corporation, which was accordingly done.

The cause was heard before Hoffman, then assistant vice chancellor of the first circuit, who in November, 1841, made a decree for the payment of the demand with interest, then amounting to $102,643,94, together with the costs, and allowing the defendants to reimburse themselves for their costs out of the assets of the estate.

The assistant vice chancellor, in the opinion delivered by him, came to the conclusion upon the questions of fact, that the Messrs. Lawrence were responsible as partners upon their transactions with Leake, and that they were indebted to him in the sum of $50,000, which was on interest at five per cent. from July 1, 1826, and that this indebtedness was concealed and denied after the death of Leake, and was not discovered by his representatives until after Lawrence died. He then stated and enforced the following propositions, referring to the authorities as hereafter mentioned.

Lawrence *v.* Trustees of the Leake & Watts Orphan House,

1. That the relation of the Messrs. Lawrence being that of agents and brokers for Leake, was of a fiduciary character, and that the statute did not therefore commence running until June, 1827, when Miller as administrator applied to A. H. Lawrence for an account, and when the indebtedness was denied. (*Murray v. Coster,* 20 *John.* 576; *Coster v. Murray,* 5 *John. Ch. R.* 522; *Spotswood v. Dandridge,* 4 *Hen. & Munf.* 139; *Goodhue v. Barnwell,* 1 *Rice's Eq. R.* 190; *Hendrick v. Robinson,* 7 *Dana's R.* 165; *Terrett v. Murray,* 4 *Yerg.* 104; *Yarborough v. Newell,* 10 *id.* 376.) The continuation of the account down to the death of Leake, and the last entry made June 1, 1827, revived all previous items and constituted the true balance an actual debt at that time, and prevented the running of the statute anterior to that date. (*Tucker v. Ives,* 6 *Cowen,* 193; *Catling v. Skoulding,* 6 *T. R.* 189; *Cogswell v. Dolliver,* 2 *Mass.* 217; *Union Bank v. Knapp,* 3 *Pick.* 96; *Sumpterad v. Morse,* 2 *Hill,* 92.)

2. That the provisions of § 9, (2 *R. S. p.* 448,) excluding from the computation of time for the purposes of the statute of limitations, the period between the death of the decedent and the granting of administration, not exceeding six months, and also the period of six months after the granting of letters, applies to this case, although the demand in question existed before January 1, 1830, when the revised statutes went into operation. (*Blackmore v. Tidderley,* 2 *Ld. Raym.* 1099; *Williams v. Jones,* 13 *East,* 449; *Palmer's R.* 530; *Hutton's R.* 109; *Call v. Hagger,* 8 *Mass. R.* 429; *Bigelow v. Prichard,* 20 *Pick.* 175; *Blackford v. Peltier,* 1 *Blackf. R.* 36; *Godfrey v Ward,* 2 *Ventr.* 185; *Snode v. Ward, id.* 197.) Upon the same principle the term of eighteen months, directed to be deducted by § 8, (*R. S. id.*) must be allowed in this case; but the statute does not extinguish the time already elapsed. (*Hicks' ex'rs v. Pouncey,* 1 *Brevard's R.* 115.) In this case therefore, assuming that the statute commenced running in June, 1827, when Miller called for an account and Lawrence denied the indebtedness, fifteen months had elapsed when Leake died, in September, 1828; but from this should be deducted six months,

according to the ninth section, even if Miller's appointment was made immediately—leaving nine months. It commenced running again after the lapse of eighteen months, on the 10th day of March, 1830, and if the six years limitation provided for the case of legal demands applies, the claim was barred on the 10th June, 1835, and the bill was not filed until June, 1838.

3. But it is well settled that in courts of equity the statute, or the rule analogous to the statute, commences to take effect in cases of fraud from the time of its discovery, not from its commission. And the same rule is applied in several of the states in courts of law, where there is no court of chancery. ( *Whalley* v. *Whalley*, 3 *Bligh P. C.* 2; *Booth* v. *Warrington*, 4 *Bro. P. C.* 163; 2 *Sch. & Lef.* 634; *Jones* v. *Conway*, 4 *Yates*, 109; *Shield* v. *Anderson*, 3 *Leigh*, 729; *Van Klyn* v. *Vincent*, 1 *McCord's C, C.* 314; 4 *Dessau.* 480; *Mitchell* v. *Thompson*, 1 *McLean's R,* 104; *Sherwood* v. *Sutton*, 5 *Mason*, 143.) In this state, however, where the action is in a court of law it is immaterial when the fraud was discovered. (*Troup* v. *Smith, in error*, 20 *John.* 40.)

4. If the matter in controversy in a court of chancery is of a purely equitable nature, not cognizable in a court of law, the statute of limitations has no application, but the court will apply the doctrine of neglect and lapse of time according to discretion, regulated by precedents and the peculiar circumstances; but where the two courts have concurrent jurisdiction, and also where the aid of equity is invoked on account of special circumstances, such as the need of a discovery, the difficulty of proceeding at law or the like, the statute is as effectual a bar as at law, with the qualification that in cases of fraud it commences running from the time of the discovery of the fraud. (*Humbert* v. *Rector &c. of Trinity Church*, 7 *Paige*, 195; *S. C. in error*, 24 *Wend.* 587; *Roosevelt* v. *Mark*, 6 *John. Ch. R.* 289; *Bardine* v. *Sheldon*, 10 *Yerg.* 41; *Murray* v. *Mason*, 8 *Porter's R.* 211; *Steel's rep.* v. *Moxley*, 9 *Dana*, 139; *Hamilton* v. *Shepard's ex'r*, 3 *Murphy's R.* 115.)

If the present claim therefore is one in which a court of law has concurrent jurisdiction with courts of equity, this suit was

barred by the statute of limitations in January, 1836—six years after the fraud was discovered. If it had been commenced in a court of law, the defence would have attached on the 10th of June, 1835—six years after the cause of action accrued, deducting the time allowed by the statute as before mentioned. But

5. Upon the death of A. H. Lawrence, the remedy against his estate was limited to a suit in equity, where alone his assets could be pursued. The executors could not be sued at law, either alone or with the surviving joint debtor. He alone was liable at law. (*Postan* v. *Stanway*, 5 *East*, 261; *Grant* v. *Shurter*, 1 *Wend.* 148.) If both parties are dead the suit must be brought against the executor of the survivor. (*Calder* v. *Rutherford*, 3 *Brod. & B.* 302; *Richards* v. *Heather*, 1 *Barn. & Ald.* 29.) In this country it has generally been held that the creditor cannot come into equity against the assets of the deceased joint debtor without establishing the insolvency of the survivor (*Caldwell* v. *Stileman*, 1 *Rawle*, 212; *Alsop* v. *Mather*, 8 *Conn. R.* 584; *Reimsdyk* v. *Kane*, 1 *Gall. R.* 385; *Pendleton* v. *Phelps*, 4 *Day*, 481; *Hubble* v. *Perrin*, 3 *Ham. Ohio R.* 287; *Jenkins* v. *De Groot*, 1 *Caines' Cas. in Err.* 122; *Hammersley* v. *Lambert*, 2 *John. Ch. R.* 508.) The cases in this state last referred to, determine that the creditor may come into this court upon the insolvency of the survivor, but do not hold that insolvency is essential. In England it is now well settled that the estate of the deceased may be followed in equity whether the survivor is insolvent or not. (*Wilkinson* v, *Henderson*, 1 *Myl. & Keen*, 582; *Braithwaite* v. *Britain*, 1 *Keen*, 206; *Bronson* v. *Douglass, reported in* 10 *Law Journal*, 14; *Devaynes* v. *Noble*, 1 *Meriv.* 503; 2 *Russ. & Mylne*, 495, *S. C.*) If therefore this case be regarded as one purely of an equitable character, and if the limitation of suits in equity prescribed by the revised statutes does not apply, because these enactments took effect after the demand had accrued, there is no ground for holding that there was such a delay in filing the bill as to deprive the complainants of relief.

6. The statute alluded to, (2 *R. S.* 301, § 52,) provides a limitation of ten years for trusts and other cases of peculiar and ex-

clusive equity jurisdiction. If this provision applies to the case, still the demand was not barred when the bill was filed, whether the time which had elapsed when the revised statutes took effect is to be computed or not. If it is included in the estimate, and the suspensions before adverted to be allowed, the demand would have been barred on the 10th day of June, 1839, if the suit had not been commenced before that time. From June 10th, 1827, when the demand accrued by Lawrence's denying the debt when called on by Miller, to June 10th, 1839, is twelve years; from which must be deducted six months from the time of Miller's appointment as collector, and eighteen months following the death of A. H. Lawrence, leaving ten years. But the 52d section should be construed in its application to demands existing when it took effect, as though they had accrued at that time, giving to the party entitled to relief the whole ten years to file his bill after the passage of the act. It provided a limitation where there was none before, and did not, as was the case with the 48th and 49th sections, adopt as statutory rules the identical principles which formed the antecedent law of the court. (*The People* v. *The Supervisors of Columbia Co.,* 10 *Wend.* 363; *Revisers' notes, vol.* 3, *p.* 705.)

An examination of the several provisions of the statute will show that the limitation of purely equitable rights applied to such rights then existing. All the limitations of suits at law *precede* the 45th section, and that section declares that none of the preceding limitations shall apply to rights of action which had accrued when the statute took effect. Then the 49th section provides that in cases where the two courts have concurrent jurisdiction the limitations prescribed for suits at law shall apply when the suit is brought in chancery. So far it is clear that rights then existing are not reached; for the 49th section is in this respect governed by the 45th—which treats of the same class of rights. Then comes the 50th section, which declares that the 49th shall not apply to cases of exclusive equity jurisdiction. Hence as to pre-existing rights of exclusive equity cognizance the 45th section does not apply, and the application of the subsequent 52d section, which provides a limitation for

that class of demands, is therefore not limited to such as accrue subsequently, but applies to those then existing.

It is clear that if *fraud* was the sole ground of equity jurisdiction, the limitation would be one of six years under the 51st section. Here however there is another ground of exclusive equity jurisdiction, viz. the existence of property liable to pay the complainants' demand which cannot be reached at law. The bill is not for relief against a fraud, but to recover a debt out of assets which can be pursued only in equity, but which debt was for sometime concealed by a fraud.

7. It is believed that the rule that where the statute has commenced running it is not arrested by a subsequent disability does not apply to this case. It is true that if we leave out the consideration of the fraudulent concealment of the debt, there was a perfect remedy at law after the granting of administration upon the estate of Leake until the death of A. H. Lawrence. The statutory disabilities, however, to which the rule is generally understood to refer—such as infancy, coverture, &c., are not absolute incapacities; for the infant and the married woman may sue in certain forms, but they are not obliged to do so. Here on the death of Lawrence it was impossible to pursue his estate at law. A new right to redress had accrued, confined to a court of equity, and to this it is believed the limitations applicable to that class of demands and no other attached. But if, as has been before shown, the right to relief in the contemplation of a court of equity did not accrue until the discovery of the fraud, the statute had not run in the lifetime of Lawrence at all, and we are relieved from the effect of any doubt there might be upon the question last adverted to.

From the foregoing considerations it is evident that no statute of limitations attaches to the complainants' demand, and that they are entitled to relief.

8. When A. H. Lawrence died the sum of $50,000 was on interest at 5 per cent. Interest should be calculated at that rate until the time when Miller inquired for the pass-book and Lawrence denied the existence of the demand. This certainly occurred as early as September, 20, 1827, when letters of admin-

istration were issued to Watts. That was an abrogation of the agreement and subjected him to the legal rate of interest if the debt was established.

The defendants appealed to the chancellor, who affirmed the decree of the vice chancellor and allowed interest on the amount decreed to be paid by way of damages for the delay caused by the appeal.

The following opinion (omitting the discussion of the questions of fact, which resulted in a concurrence with the vice chancellor) was delivered by

THE CHANCELLOR. I am satisfied that there is no error in this decree of which the appellants have a right to complain in relation to interest. If the false entry in the books was made for the purpose of defrauding the estate, very soon after the death of Leake, as I think it was, that was of itself a sufficient breach of the previous agreement to allow interest at five per cent. to entitle the executors of Leake to claim seven from that time. And certainly the debtors had no right to claim the benefit of the agreement as subsisting at the time, from which the assistant vice chancellor has allowed seven per cent. interest to be computed. Again: if the interest is to be computed upon the basis of the agreement of five per cent., it should be compounded, for that was undoubtedly the understanding between the parties.

The only question which remains to be considered is, whether this suit was barred by the statute of limitations; for if there is no statute which is a flat bar, the delay in commencing the suit in this court until after the determination of the action at law against the surviving copartner, is not sufficient to induce this court to refuse relief.

Had the executors of Leake neglected to pursue their remedy at law against the surviving copartner, who was perfectly responsible when the right of action accrued, until such right of action was barred, there might be some doubt whether they ought not to be precluded from coming into this court to obtain

satisfaction out of the estate of his deceased copartner, even if the survivor had subsequently become insolvent. But that question does not arise here, as the executors of Leake commenced their action at law against A. N. Lawrence in 1830, while he was solvent and responsible, and prosecuted that action to judgment and execution. The six years' limitation might have been applicable to the case if there had been a concurrent remedy in this court, and at law, for the recovery of the debt against the copartners immediately upon the death of Leake, and such concurrent remedy had continued without intermission. But, so far as relates to the $50,000, at least, the representatives of Leake could not have had a pretext for coming into this court for an account immediately upon his death, as that was a liquidated sum left with the bankers, upon a special agreement, and at a given rate of interest. The remedy to recover it was therefore at law only, at that time, and this court had no jurisdiction which was concurrent so as to make the six years' limitation applicable to the suit here.

The ten years' limitation, therefore, is the only one which is applicable to the case in this court : and if that commenced running immediately upon the death of A. H. Lawrence, in September, 1828, the bill was filed within the time allowed by law, whether the provisions of the revised statutes are or are not retroactive in their operation in cases where this court has exclusive jurisdiction. The question whether a creditor of a copartnership firm, one member of which has died, can file a bill in this court against the representatives of the decedent and the surviving members of the firm for payment, without averring in his bill that such surviving members are insolvent, appears to be one in which the decisions in this country are in conflict with some recent decisions on the subject in England.

The weight of authority, however, is in favor of tne principle, that, as the remedy at law survives, the creditor is bound to resort to his legal remedy against the surviving debtors, unless he can show some ground of necessity for coming into this court for relief against the estate of the deceased debtor; and I am not disposed to follow these recent cases in England,

Lawrence *v.* Trustees of the Leake & Watts Orphan House.

and to extend the jurisdiction of this court to a case to which it has never yet been extended by any adjudged case which is binding here as authority. My own opinion of the law on this subject has always been, that the estate of a deceased copartner, or joint debtor, in the hands of his personal representatives, could not be reached by a suit in this court, without stating, in the complainant's bill, a sufficient excuse for not proceeding at law against the surviving debtors to obtain payment; but that, where the debt was joint and several, the rule was otherwise; and I was not aware that any doubt existed on the question, until I saw the recent decisions in the English courts, to which I have before referred. ·The examination of the cases on this subject, and the reasons of the rule, satisfy me that my understanding of the rule was correct.

There never was, therefore, any right of action or suit against the executors of A. H. Lawrence for the recovery of this debt, either at law or in equity, until after the failure of the surviving copartner; which failure could not have been earlier than 1834; and as the right of action as against him has been kept alive by the commencement of a suit at law, and the prosecution thereof to judgment, the remedy of the complainant in this court, as against the estate of his deceased copartner, was not barred by any act of limitation at the time this bill was filed, in June, 1838.

The answers of the defendants admit a sufficiency of assets; , and there is no pretence that any of them were ignorant of the facts upon which this claim is based, previous to the commencement of this suit. There was no reason therefore for excusing them from the payment of the costs to which their refusal to pay the debt had subjected the adverse party; and there is no error in that part of the decree. The decree appealed from is therefore affirmed, with costs, and with interest on the amount of the decree of the assistant vice chancellor, as damages for the delay and vexation caused by the appeal.

The cause was argued here by

*S. Stevens & G. Griffin*, for the appellants, and

*D. Lord & G. Wood*, for the respondents.

The following opinions (omitting the examination of the questions of fact, in regard to which the members of the court delivering opinions concurred with the vice chancellor and chancellor,) were delivered.

JEWETT, J. The most important question involved in this case, as it seems to me, is, whether the suit is barred by the statute of limitations. I have deliberately considered the arguments submitted and have examined the principles of the adjudged cases applicable to the question, and am satisfied that the following conclusions arrived at by the court below are correct.

1. That according to the well settled rule in our own courts, which was also until recently the rule in the English courts, there was no concurrent remedy in equity and at law for the recovery of the debt against the copartners, A. H. & A. N. Lawrence, immediately on the death of Leake, and that therefore the six years' limitation does not affect the remedy in this suit.

2. That the ten years' limitation, (2 *R. S.* 301, § 52,) is the only one which was applicable to this case in a court of equity, and conceding it, (for the purposes of this case,) to have commenced running on the death of Lawrence, which occurred in September, 1828, the bill being filed in June, 1838, was in time to save the demand from being barred by the operation of that limitation.

3. That a creditor of a copartnership firm on the death of one of its members, cannot sustain a bill against the representatives of the deceased and the surviving members, or against such representatives alone, without averring and proving that such surviving partners are insolvent; that as the remedy at law survives, the creditor is bound to resort to his legal remedy against the surviving debtors, unless he can show a necessity

for coming into a court of equity for relief, against the estate of the deceased debtor, notwithstanding there are recent decisions to the contrary in the English courts. This is on the ground that such debt is joint, and not joint and several. In the case of joint and several debtors, the rule is otherwise.

4. That therefore there never was any right to relief against the executors of A. H. Lawrence for the recovery of this debt, either at law or in equity, until the insolvency of A. N. Lawrence, which did not occur until 1834; and as the right of action as against him has been saved by the commencement and prosecution of a suit at law to judgment, the remedy of the complainant in a court of equity, as against the estate of A. H. Lawrence, was not barred by any act of limitation at the time of filing the bill in this suit.

5. That on the $50,000, interest should be computed at five per cent., the stipulated rate between the parties, from the 1st of July, 1826, to the time when A. H. Lawrence denied the existence of the debt. From that time, if the claim was sustained, he subjected himself to the legal rate of interest. The time fixed upon when that event occurred in the decree is the 20th of September, 1827, the time when letters *pendente lite* were issued to Watts. It did in fact happen at the time Miller demanded of A. H. Lawrence the pass book; and that demand was made prior to that date. At all events the appellants have no ground to complain as to the time when the rate of interest was changed, as provided by the decree, if it was right to change it from five to seven per cent. at any time.

I am therefore in favor of affirming the decree appealed from.

Porter, Senator. The appellants' counsel insists that the right of action in this case accrued as early as the summer of 1827, when A. H. Lawrence denied the indebtedness; and that the six years' limitation provided by 2 *R. S.* 295, § 18, which is as available in this case in equity as at law, (*id.* 301, § 49,) began to run from that time. They further insist that the representatives of Mr. Leake might have filed their bill on the death of A. H. Lawrence, in September, 1828, against his exec-

utors for the recovery of this debt, though there was a surviving member of the firm in possession of its property to a large amount. A. N. Lawrence was held out to the world as a co-partner, and though by the special arrangement between himself and his father he may not have participated in the profits, yet for all the purposes of this suit he must be deemed a member of the firm. At the death of A. H. Lawrence the property of the firm passed to the possession of A. N. Lawrence, as surviving partner. The law gave him the control of it, and vested the title to it in him, as a fund appropriated to pay the debts of the copartnership. The executors of A. H. Lawrence had no right or interest in it, until those debts were all satisfied; when they might bring the survivor to an account for the balance. If the representatives of Leake were required by law to pursue their remedy in the first instance against A. H. Lawrence & Co., and after his death against the survivor, within six years, in order to have kept their claim alive; the answer is, they have performed this condition by suing the survivor within six years, and have prosecuted their claim to judgment, when he proved to be insolvent. But the appellants insist that a bill might have been filed against the executors of A. H. Lawrence immediately after his death; and that not being done, that they can avail themselves of the statute of limitations as a defence to this suit. And hence arises the principal question in the case, viz. whether the representatives of Leake were required by law to seek their remedy against the survivor, and exhaust the fund in his possession, before they could look to the separate estate of A. H. Lawrence. Upon this question there appear to have been some recent adjudications calculated to create some doubt or hesitation. But these decisions have been, I believe, except in one instance, confined to the English courts; and it is not denied that they are innovations upon former well established principles.

It cannot be useful to review the cases in the English courts upon this point; for I have not understood the appellants' counsel to contend that any of them were prior to 1816, when the case of *Devaynes* v. *Noble*, (1 *Meriv.* 503,) was decided. The doctrine

there maintained would authorize the estate of A. H. Lawrence to be proceeded against in the first instance, without alleging the insolvency of the survivor. Collyer, in his Treatise upon the Law of Partnerships, gives a very full statement of all the prior cases bearing upon this point, and concludes thus : "The result of these authorities is, that upon the death of a partner, the creditor of the firm, unless he holds the joint and several security of the partners, has no immediate claim on the deceased partner's estate, as a separate creditor of that partner ; but only a claim through the equities of the partners themselves ; which claim may be exercised, in case of the insolvency or insufficiency of the partnership estate." (*P.* 342.) The reasons given by the judges are very cogent—that by a contrary rule the creditor is put in a better situation than he would have been in if he had sued in the lifetime of the deceased partner ; for then he could not have sued him alone ; and it is a rule that the individual property of the partners must be first applied to pay individual debts, before it can be taken to satisfy partnership debts. The partnership debts, to satisfy which you are thus allowed to pursue the assets of a deceased partner, on the ground of his several liability, will come in to be paid off *pari passu* with his individual debts ; thus breaking down the rule which gives preference to individual creditors. Collyer cites and comments upon the cases decided the other way in England, beginning with *Devaynes* v. *Noble ;* but his treatise was published before 1833, when the case of *Wilkinson* v. *Henderson,* (1 *Myl. & Keene,* 582,) was decided. Although the latest decisions in England had shaken former cases upon this point, yet this author states that, in 1832, when his treatise was published, the point in question was not, in his opinion, finally settled. Since the case of *Wilkinson* v. *Henderson,* (1 *Myl. & Keen,* 582,) decided the following year, it would seem to be settled in England, that in a court of equity a partnership debt is *several* as well as joint, and that the creditor is entitled to satisfaction out of the assets of a deceased partner, without first resorting to the surviving partner and exhausting his remedies against him.

The question seems now to present itself, whether this court

shall follow the courts in England in overturning a well estab
lished principle, and authorize a resort to chancery jurisdiction
in the first instance by the creditors of a partnership, to obtain
satisfaction out of the assets of a deceased partner, without
regard to the fund in the hands of the survivor, or his ability to
pay the debt. The arguments used in the English courts have
failed to convince me of the wisdom of their new rule. The
law authorizes the survivor to retain possession of all the part-
nership property, and it gives the creditors of the partner-
ship a preference over individual creditors in their right to
satisfaction out of such property. Now to allow these rules to
stand, and yet permit the creditor of the partnership to resort to
the assets of the deceased partner, and come in for payment out
of those assets *pari passu* with the individual creditors of the
estate, seems to me inconsistent with principle. While the part-
nership fund is sufficient to satisfy the claims upon it, it is
harassing and unjust to those who succeed to the estate of the
deceased partner, to permit the creditors of the firm to seek sat-
isfaction out of that estate; and while those creditors enjoy a
preference over the creditors of the individual partners, in
respect to the partnership fund, they should not be permitted
to deprive the individual creditors of their preference in regard
to individual property.

I will refer to a few cases to show how the American courts
have regarded this question. In our own state this precise
question has never before been adjudicated; though it has been
decided that the partnership creditor might seek his remedy in
equity against the assets of a deceased partner, whenever the
survivor is insolvent. But in some of the other states the pre
cise question has arisen, and the decisions are, I believe, uniform.
In *Sturges* v. *Beach*, (1 *Conn. Rep.* 509,) which was a case in
equity, Chief Justice Swift, in giving the opinion of the court
says, "The surviving partner is liable at law for all the debts,
and the creditors, if he is able to pay, cannot call on the repre-
sentatives of the deceased. It is only on the failure of the sur-
vivor, that the estate of the deceased can be made liable in
equity." In *Alsop* v. *Mather*, (8 *Conn. Rep.* 584,) the court

say, "There is no case in England or in this country, in law or in equity, of pursuing the assets of a deceased partner, while the surviving partner is solvent." This is strong language, but I apprehend it is entirely correct, so far as this country is concerned. This decision was made in 1831, and before the case of *Wilkinson* v. *Henderson.* In *Lang* v. *Keppele*, (1 *Binn.* 123,) the court say, that in order to reach the estate of a deceased partner, an action for the partnership debt will be sustained against his executor, if the surviving partner be a certificated bankrupt before action brought. So also in *Caldwell* v. *Stileman*, (1 *Rawle*, 212,) the same court, per Huston, J. say, "Before the estate of a deceased partner can be made liable, it ought to appear that the surviving partner was unable to pay. The creditor has no equitable remedy against the representatives of the deceased partner, until he has exhausted all legal remedies against the survivor." "The partnership fund is by law appropriated to the creditors of the firm, and they ought to show that it is exhausted, before they can resort to the estate of the deceased partner." Mr. Justice Story, in *Reimsdyk* v. *Kane*, (1 *Gall. Rep.* 385,) and Mr. Justice Livingston, in *Pendleton* v. *Phelps*, (4 *Day*, 481,) held the same doctrine on this subject in the circuit courts of the United States. In *Hubble* v. *Perine*, (3 *Ham. Ohio, Rep.* 287,) the supreme court of Ohio held "that equity will not lend its aid to subject the separate property of a partner to the payment of the partnership debts, while the joint property of the firm is unexhausted. That is the proper fund for the payment of partnership debts, and must be resorted to, before the separate funds of the partners can be reached through the agency of this court." Other American cases might if necessary be cited to shew the uniformity of the decisions in this country upon this question. The authority of Judge Story, who in his treatise upon equity jurisprudence gives his opinion at variance with his ruling in the circuit court of the United States in the case above quoted, has been pressed upon the court. (*Story's Eq.* 3*d ed. p.* 674.) He first states the principle as contained in the older English and American authorities, and then says, "That a broader principle is now

established; and that resort may be had in the first instance to the estate of the deceased partner, without regard to the partnership fund." The only authorities which he cites to justify this strong assertion, are *Devaynes* v. *Noble*, and *Wilkinson* v. *Henderson.* However much Judge Story may have been convinced by the reasoning of the cases cited by him, it would seem to be going too far to say, that these cases had overturned the theretofore settled law of the English and American courts upon this point, and established a new rule; certainly he could not have adverted to the decisions of the American courts, when he thus authoritatively declares this new principle to be *established.*

I have therefore no hesitation in coming to the conclusion that the representatives of Mr. Leake had no right whatever to resort to the estate of A. H. Lawrence to recover this debt, until after the effort to recover it of the survivor had failed; and as this took place in 1834, the appellants are not aided by the statute of limitations. In my opinion the decree of the chancellor should be affirmed.

On the question being put, "Shall this decree be reversed?" all the members of the court present who had heard the argument, viz., The PRESIDENT, Mr. *Justice* JEWETT, and *Senators* BACKUS, BARLOW, BEEKMAN, BOCKEE, BURNHAM, CHAMBERLAIN, DENNISTON, DEYO, EMMONS, FOLSOM, HAND, JOHNSON, LESTER, LOTT, MITCHELL, PORTER, SCOVIL, SEDGWICK, TALCOTT and WRIGHT, (22) voted for affirmance.

Decree affirmed.