On Application for Rehearing.
Watkins, J.
We have considered appellant’s application for an oral argument on this motion, but deem it unnecessary to depart from the rules of court, as the question on which it rests is one of law, and the mover’s brief is elaborate, and fully presents the authorities relied upon as supporting its theory.
That theory is that, having a final and unqualified judgment against the defendant for $33,000 as their agent, the plaintiff had the right to receive payment, or securities from him, for the deficiency, which was not covered by the obligations of the sureties.
For instance, plaintiff’s judgment being for $33,000, and the several obligations of the sureties aggregating only $10,000, Randall was at liberty to make a payment to the plaintiff in money, or to furnish it securities to the extent of the difference of $23,000, and the plaintiff had the right to appropriate same to the satisfaction of that difference — it not being covered by the sureties’ obligations — and that, only, when this deficiency had been first provided for, could the sureties complain of any after application of rights and securities of the debtor; and then, to the extent only of the injury suffered by the sureties.
As supporting this proposition, counsel cites a number of authorities. The general effect of those decisions is, that a partial release of any of the mortgages, or privileges of the creditor, releases the surety only pro tanto; or, in other words, the discharge of the surety only takes place, to the extent to which the acts of the creditor have prejudiced the recourse of the surety for reimbursement of what he may be obliged to pay, under the contract of suretyship. Or, as the case is put by Judge Story:
“On the other hand, if the creditor has any security from his *267 debtor, and he parts with it without communication with his surety, * * that will operate, at least to the value of the security, to the surety’s discharge.” Story’s Equity Jurisprudence, Sec. 326.
A careful study of the question has satisfied us that the contention of the plaintiff’s counsel can not prevail, though the principles of law that are announced in the various authorities cited are well recognized by us.
We held, simply, that the insurance company received from Randall, the defendant, all the values he possessed, and converted them to its own use, without the consent of the sureties, and, in so doing, placed same beyond their reach, and deprived them of their rights of subrogation to the rights of the company, against their principal; on the theory that, when a creditor intends to look to the surety for payment, he is bound to preserve unimpaired all his rights against the debtor.
On this hypothesis our opinion proceeds and declares:
“If the creditor, therefore, does any act,| without the sureties’ consent, which impairs his right of subrogation, or the means of enforcing his claim against the principal, in case he should be called upon to pay the debt, the surety will be discharged.”
Our opinion rests upon an article of the Code, and McGuire vs. Wooldridge, 6 R. 47, and Offut vs. Hendsley, 9 La. 12; but, many other cases of like import and force can be cited. To point the argument in favor of its correctness we make the following quotation from the latter:
“ It being of the nature of the contract of suretyship, that the surety who pays, whether willingly or compulsively, has a right to demand the subrogation of all the creditors’ rights on his debtor, his property, and his sureties. This right of subrogation is the consideration (or a part of it) of the obligation which the surety contracts. There is a privity of contract between the surety and the creditor which compels the latter to preserve his rights for the former. If the preservation of these rights be burdensome to the creditors, they put an end to all trouble when the day of payment arrives by insisting on payment by the surety. No one can become surety against the creditor’s will, though he may against that of the debtor. The assent of the creditor is of the essence of suretyship, and no one can complain of the natural consequences of any contract into which he may enter.”
*268 To this effect are many authorities. 8 N. S. 398; 3 La. 352; 6 La-514; 1 R. 212; 4 R. 506; 5 An. 266.
It follows that the surety has a right to stand upon the very terms of his contract, and the creditor has no right to make any alteration in it.
■ These principles are founded on provisions of the Code. Surety-ship is an accessory promise made to the creditor. R. O. O. 3035, 3045.
“ The surety is discharged when, by any act of the creditor, the subrogation to his rights, mortgages and privileges, can no longer be operated in favor of the surety.” R. O. O. 3061.
His discharge proceeds upon the theory, that the act of the creditor which deprives the surety of the right of subrogation of the former’s securities, violates their privity of contract, and prevents the latter from taking them to himself on paying the debt of the princi - pal, to the extent of suretyship.
Undoubtedly the creditor has a right to receive securities from the debtor, but he has not the right to appropriate them, and thus deprive the surety of the right of subrogation, in case of making payment. The creditor’s first and highest duty is to the surety; and he has nó right to first exhaust the debtor’s resources, and reduce him to a state of bankruptcy, and then call upon the surety to pay the balance that remains due.
We are thoroughly satisfied that our opinion is well grounded in law.
Rehearing refused.