### Case No. 10,923.

PENDLETON et al. v. PHELPS et al.

[Brunner, Col. Cas. 95;[1] 4 Day, 476.]

Circuit Court, D. Connecticut. April, 1810.

STATUTE OF LIMITATIONS—CLAIM AGAINST ESTATE OF DECEASED PARTNER, WHEN BARRED BY.

A claim against the estate of a deceased partner, accruing in consequence of the insolvency of the surviving partner, after the statute of limitations had run upon the claims against such estate generally, is not barred, though not exhibited within the period limited by the statute.

[Cited in Troy Iron & Nail Factory v. Winslow, Case No. 14,199.]

[This was a bill in equity by Nathaniel Pendleton, Richard L. Hallett, Philip Rhinelander, William Rhinelander, Richard Hartshorn, William Kenyon, Joseph Lindley, John Delafield, and Edward Laigh, against Timothy Phelps, John Bulkeley, Peleg P. Sanford, Elias Shipman, and Nathan Beers.]

The circumstances stated in the bill, so far as they are necessary to understand the point decided, were as follows: In February, 1801, Peleg Sanford and Timothy Phelps, merchants in company, under the firm of Phelps & Sanford, applied to the petitioners to make insurance on the freight of the schooner Betsey, from New York to St. Jago de Cuba. The policy was valued at $4,000, and the amount was underwritten, in different proportions, by the petitioners.

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission.]

The schooner sailed from New York, and after arriving in sight of her destined port, was captured and carried into Jamaica. The owners immediately made an abandonment, which the underwriters accepted, and paid for a total loss. The vessel and cargo were libelled in the vice-admiralty court of Jamaica, and, upon trial, a restoration of the property was decreed, the owners first giving bond to abide the event of a rehearing in the English admiralty court, to which the captors appealed, and from which the appeal was dismissed, and the sentence below confirmed. Pending the appeal, a dispute arose between the underwriters and the insured, respecting the liability of the former to contribute to the expenses of the trials, and their right to receive freight, pro rata itineris per acti, stated at sixteen seventeenths of the voyage insured. The matter was submitted to arbitrators, who awarded that the underwriters were entitled to a pro rata freight, upon payment of a proportionable part of the expense consequent upon the captor, in case the sentence of the vice-admiralty court should be confirmed. The petitioners, in pursuance of the award, paid their proportion of the expenses incurred by reason of the capture. The arbitrators made their award in February, 1803. In April, 1804, the sentence of the vice-admiralty court was confirmed. Peleg Sanford died in April, 1802, abundantly solvent, having made a will, in which the respondents, Shipman and Beers, were named executors, who accepted the trust, and caused the will to be proved and approved. Shortly after the decision in favor of the ship and cargo the petitioners commenced actions against Phelps, as surviving partner of the firm of Phelps & Sanford, to recover freight for that part of the voyage performed before the capture. It was agreed that all the causes should abide the event of a single trial, which eventually resulted in favor of the plaintiff. In 1806 Phelps became bankrupt, and obtained an act of insolvency in his favor, the claim of the petitioners remaining wholly unsatisfied. Peleg P. Sanford is now sole heir to the estate of Peleg Sanford, deceased. The petition sought relief against the heir and executors in consequence of the insolvency of Phelps, the surviving partner. To this bill there was a demurrer, under which the respondents relied upon the statute of limitations of this state against the claim stated in the bill, which provides that any persons not being inhabitants of this state shall have liberty to exhibit their claim against an estate which shall not be represented insolvent, at any time within two years after publication of notice; the same statute having previously limited a shorter time for the exhibition of claims generally. St. Conn. tit. 60, c. 1, § 23.

For the petitioners it was contended that they were not creditors of Sanford at the

time of his decease, or within two years after. They were not creditors, either in law or in equity, until the bankruptcy of Phelps. There was, therefore, no necessity of exhibiting this claim to Sanford's executors within the two years specified in the statute. The term "claim," as it is there used, is synonymous with the word "debt," and imports a right to demand money out of the estate of the deceased. But can it be said that a person who has no such existing right, and perhaps never will have, is a creditor. or has a claim which must be exhibited within a limited time? Commissioners cannot report on future contingent claims. The estate of a deceased person is in certain cases to be sold for the payment of debts; but it cannot be sold to pay contingent claims. The cases in the English books which show what claims may be proved under a commission of bankruptcy will illustrate our law, and confirm the position for which we contend. Tully v. Sparkes, 2 Strange, 867; Crookshank v. Thompson, Id. 1160; Hockley v. Merry, Id. 1043; Goddard v. Vanderheyden, 3 Wils. 262; s. c., 2 W. Bl. 794; Ex parte Adney, Cowp. 460. The case of Backus v. Cleaveland, Kirb. 36, decided in this state, is more directly in point. If at the expiration of the two years the petitioners had released all claims and demands whatsoever it would have been no bar to this claim. There was no antecedent debt or duty, and therefore a release would not bar it. Hoe's Case, 5 Coke, 71; Hancock v. Field, Cro. Jac. 170; Belcher v. Hudson, Id. 222; Whitton v. Bye, Id. 486; Porter v. Philips, Id. 623; Cage v. Acton, 1 La. Raym. 518.

The counsel for the respondents contended that the claim ought to have been exhibited to Sanford's executors within the two years. The estate of Sanford was solvent, and when this is the case the law does not require claims to be proved to the executor. He pays such as he pleases, being liable on his bond for any abuse of his trust. But in case of an insolvent estate, the commissioners, who are the officers of the court of probate, decide on all claims presented to them, and their decision is conclusive. In solvent estates the creditor is required only to exhibit his claim; in insolvent estates he must prove his claim. The object of the bond given by the heirs to refund (vide St. Conn. tit. 60, c. 1, § 17) is to furnish means of payment for claims which the executor may have improperly rejected. In cases of insolvency it is the object of our system to bring estates to a final settlement. It is no reason for not presenting a claim that the amount is uncertain. Such must necessarily be the damages for breach of covenant, and in many other cases. Jones v. Woodhull, 1 Root, 298. The cases cited from the English books are all on the principle that the claims could not be sworn to, and by their statutes of bankruptcy no claims can be sworn to unless they are certain and liquidated. Our rule in regard to the estates of deceased persons is different. Unliquidated claims, as well as liquidated, may be exhibited against the estate of a person deceased. The case of Filly v. Brace, Id. 507, was cited. (Edwards, J.— Before the case of Filly v. Brace, the superior court had decided otherwise, though manifestly contrary to British authority. Livingston, J., said, that the only question here was, whether the petitioners were creditors of the estate of Sanford. There must be, within the two years, a claim, so that the claimant may be termed a creditor. It is of no consequence whether the claim be liquidated or not.) At law there is no claim against a deceased partner; but in equity both partners owe the debt, and also their representatives. The remedy is indeed against the surviving partner only; but there is no rule of law which limits the debt to him. It is correct in a court of equity to say that Sanford. or his representatives, owed the whole of this money. Further, the money paid in this case was for a consideration which happened to fail. There was never any foundation for the payment of this money. The underwriters ought never to have paid it. The vessel ought never to have been condemned. There was, therefore, an equitable right to recover this money out of Phelps & Sanford when the vessel was condemned in the West Indies. The arbitrators decided that there was a claim against Phelps & Sanford under certain contingencies, which contingencies actually happened. The petitioners could have made a claim. They might have exhibited their claim if they had not proved the amount precisely; and this would have been sufficient to save the case out of the statute. It is the policy of our laws that all claims should be limited. The statutes of limitation are favorably regarded in our courts.

Livingston, J., asked if this claim was not barred by statute, would it ever be barred by our common law? The counsel for the respondents answered in the negative.

LIVINGSTON, Circuit Justice, delivered the opinion of the court. After stating the case, as it appeared from the bill, he observed that the only question was whether the petitioners were creditors of the estate of Sanford in such a sense as to require the exhibition of their claim within the two years limited by the statute. It is the opinion of this court that they were not. It would have answered no purpose for the petitioners to have exhibited a demand against Sanford's heirs. There is no case in England, or in this country, in law or equity, of pursuing the effects of a deceased partner while the surviving partner is solvent. Phelps was solvent during the whole two years claimed as the term of limitation. This is different from the case of a demand payable at a future period. It was here im-

possible to know that there would ever be a demand against Sanford, as it could arise only in consequence of Phelps' insolvency. This was an event not to be foreseen or calculated upon. The executors could not withhold property from heirs and devisees for such an uncertain demand. There is some force in the argument derived from the section of the statute requiring heirs to give a bond to refund in case of future creditors. This is like the case of a covenant of warranty, on which a claim may never arise. It is said that after a claim is discovered it must be presented like other claims, in two years. But there is no force in such an argument. There is no law of that sort. The demurrer is overruled, and let the bill stand for an answer.