## TEN EYCK v. WING.

Debt on judgment recovered in 1824. Plea, statute of limitations. Replication, that in Nov. 1832, a pluries execution was taken out on the judgment; that on the 17th of the same month defendant filed a bill in chancery and obtained an injunction, restraining proceedings on the execution; that on 17th Nov. 1835, it was stipulated between the parties in the chancery suit, that the injunction be dissolved, that the pluries execution be set aside, that there be a reference to a master to take testimony in the chancery suit, and to state an account between the parties, to state the amount due on the judgment, and ascertain the amount of any and all legal and equitable set-offs to the judgment. That testimony was taken under the stipulation by both parties; that the master made his report in January, 1838, and that in March, 1846, the case was heard in the court of chancery, and a decree made dismissing the bill with costs. On demurrer, the replication was held bad, as the case did not come within the exceptions of the statute of limitations, and the replication did not show such an acknowledgment of the debt as would warrant the implication of a new promise.

Where a new promise is set up to take a case out of the statute of limitations, it ought to be proved in a clear and explicit manner, either expressly, or by such an unqualified acknowledgment as authorizes its implication.

The acknowledgment should contain an unqualified and direct admission of a present subsisting debt, which the party is liable and willing to pay, and be unaccompanied by any circumstances or declarations which repel the presumption of a promise, or intention to pay.

CASE reserved from Wayne Circuit Court. The facts appear in the opinion of the court.

*O'Flynn*, for plaintiff.

*Fraser*, for defendant.

*By the court*, MILES, J. The plaintiff declared in debt upon a judgment recovered in the supreme court of the then territory of Michigan, on the 25th day of September, A. D. 1824. The defendant plead that the action was not commenced within eight years next after the rendition of the judgment. To this the plaintiff replied specially, that on the 5th day of November, 1832, he sued out a pluries execution upon the judgment, and delivered the same to the sheriff of the county of Monroe, to be executed; that before the same was executed, to wit, on

Ten Eyck *v.* Wing.

the 17th day of November in the same year, the defendant filed a bill in the same court sitting in chancery, against the plaintiff, and for *reasons therein set forth*, prayed for and procured to be issued and served upon the plaintiff an injunction out of said court, inhibiting him from all further proceedings upon the execution so issued, until answer filed and a final hearing, and that a subpœna to appear and answer was served upon the plaintiff (the defendant in the bill), who caused his appearance to be entered accordingly. That on the 17th day of November, 1835, a stipulation in writing was entered into between the parties to the chancery suit, by which it was agreed that the injunction be dissolved, and that the pluries execution be set aside, and that an order be granted by any judge of said court during the then vacation to that effect, reserving to the defendant in this case all right to set aside the execution, which was antecedent to the pluries execution, and reserving to the plaintiff all right to amend the same and the returns thereto, or any irregularity in issuing the same; and further, that the chancery suit be referred to a master to take testimony on both sides, and to state an account between the parties, to state the amount due on the judgment, and to ascertain the amount of any and all incumbrances upon certain property in the bill mentioned, and also to ascertain the amount of any and all legal and equitable set-offs to the judgment; that the testimony so taken should be read on the hearing of the cause, subject to all legal objections and exceptions, and that the report of the master should be subject to all legal exceptions, and that the cause should be submitted to the court upon final hearing, either upon written briefs at the then next term, or upon argument thereafter. The replication further states that the testimony of both parties was taken before a master, who discharged and performed his duty and made a report of his doings *in all things*, as required by the stipulation, to the said supreme court, on the 9th day of January, 1838, and that in the term of March, 1846, the pleadings and proofs in the cause and the report of the master were duly submitted to the court of chancery for the *state* of Michigan, for final decision, and that that court, after hearing counsel, made a decree dismissing the bill with costs to the defendant therein, and that the decree is still in full force.

The defendant has demurred generally to this replication, and the plaintiff has joined in demurrer. The question reserved for the opinion

of this court is, as to the sufficiency in law of the facts set forth in the replication to avoid the statute of limitations.

The defendant insists, that the only question presented by the pleadings is, whether the plaintiff has brought himself within the exceptions or saving clause of the statute, and that this clause has been strictly construed by courts of justice, and never extended by equity.

As we understand the argument of the plaintiff's counsel, the following are the main propositions sought to be established by him:

First, that he was prevented by the injunction from sooner bringing suit; and, Secondly, that by the stipulation there was a sufficient recognition of the existence of the debt, and acknowledgment of the defendant's liability to pay, to take the case out of the statute.

Without discussing the question whether a new promise can be replied to a plea of the statute in an action of debt upon a judgment, we shall proceed at once to consider the points made by the plaintiff; and as this is upon those points a case of the first impression in this court, we can only refer to the decisions of other courts as illustrative of the principle upon which the statute should receive a construction.

The language of the statute is general, and provides that "All actions of debt or scire facias on judgment shall be commenced and sued within eight years next after the rendition of such judgment, and not after." Laws 1833, p. 571.

By the 9th and 10th sections there are savings in the cases of the arrest and reversal of judgments, of judgments on plea in abatement and upon demurrer, and in favor of infants, femes covert, persons imprisoned or beyond seas, and where a person shall be without the territory at the time the cause of action accrues, and shall not have known property or estate within the territory liable to attachment; giving the person entitled to the action a right to bring the same within the time limited, calculating from the time the impediment shall be removed in cases of infants, &c., and from the time of the return of the party in the latter case.

All these cases so excepted are clearly within the general terms of the act, and but for the saving clause would, upon a reasonable construction, be deemed within its provisions.

General words in a statute must receive a general construction, and if there be no express exception, the court can create none. Demarest v. Wynkoop, 3 John. Ch. Rep. 142.

Chancellor Kent, in the opinion in this cause, says it was agreed without contradiction in Stowell v. Zouch, Plowd. 369 b. 371 b., that the general provisions in the statute of fines would have barred infants, femes covert, and the other persons named in the proviso, equally with persons under no disability, if they had not been named in the exception or saving clause; and that in Dupleix *v.* Roven, 2 Vern. 540, the Lord Keeper thought it very reasonable that the statute of limitations should not run where the debtor was beyond sea, but as there was no saving in the case, he could not resist the plea of the statute. The statute of 21 Jac. 1 had no saving of this description. The chancellor also refers to Beckford *v.* Wade, 17 Ves. 87, in which last case reference is also had to 2 Salk. 420, and 10 Mod. 206.

We do not understand the plaintiff as insisting that he comes within the letter of the provisions of the 10th section, but he contends this section should, by an equitable construction, be extended so as to include a case where a plaintiff has been delayed by an injunction out of chancery.

Our statute is substantially a copy of the act of 21 James, with some additions, to the 3d and 4th sections of which the 7th and 9th sections of ours correspond.

Certain cases have been held to be within the equity, though not within the letter of the 1st and 2d provisos of the 4th section of that act; as where the action is brought within six years, and the plaintiff dies before judgment, his executor or administrator may have a new action within the equity of the first proviso. See Wilkinson on Limitations, 43, and the cases there cited.

The reason assigned for this is that the latter, though in form a new action, is in substance but a continuation of the old one. The plaintiff is in no default, and it is not intended that the statute meant to bar where the party has lost his trial by the act of God, if the action is renewed in a reasonable time. In this state, this is now provided for by statute. R. S. 1838, sec. 10, p. 577, re-enacted R. S. 1846, sec. 10, p. 601. But this is not extended to a case of nonsuit, which is either by the voluntary act of the party or the opinion of the court against him, and the suit commenced afterwards is consequently a new suit. Angel on Lim. old ed. 328, and the case there cited. It is to be observed, that in the case of the death of a party, the statute is held not to ope-

rate, and the 4th section is only referred to by way of analogy, in determining what shall be a reasonable time, so it can scarcely with propriety be said that this is an extension of the provisions of that section, though such is the language used. All the later cases insist upon a strict construction, and are opposed to such extension. 2 Gall. 319; 20 John. Rep. 46; 3 Pet. Cond. 54. So if an action brought by a *feme sole* abate by her marriage, she and her husband may have a new action. Willes 260, note.

It may be remarked, that the same argument used against a party in case of a nonsuit, that he should not begin again after six years because of his voluntary act in abandoning his suit, failed in this case, it being urged on error to the King's Bench, that the suit was abated by the marriage, the voluntary act of the party; that the statute of limitations was a law of peace for the security of property, and ought not to be extended by equity. The only reply of the court to this argument appears to have been, that the statute had received a favorable construction. 2 Saund. 63 h, note; Huntington *v.* Brinkerhoof, 10 Wendell 278, where the same equitable construction is given to the New-York statute, in the case of an administrator.

In the case of Barker *v.* Millard, 16th Wendell 573, Bronson, J. says the equity of the statute has never been extended far enough to aid a party where the commencement of his suit has been stayed by injunction out of chancery; that he has met with no case where it was held that an injunction out of chancery would suspend the running of the statute; that the contrary doctrine is strongly implied in many cases; that the party to a suit in chancery has often applied to that court to restrain the defendant from setting up the statute in an action at law; and hence, he argues, if the pendency of the injunction would be a good answer to a plea of the statute of limitations, such an application would not have been necessary. He refers to 1 Vern. 74; 2 Atk. 1; Gilbert *v.* Emerson, 2 Vern. 503; Bac. Abr. Limitation of Actions, E 6; Blanshard on Limitations 164; Vin. Abr. Lim. T.

In that case as in this, the statute had commenced running before the injunction was obtained, and counsel insisted that the period of time during which a suit was stayed by the injunction should be *deducted* from the statute.

The 5th sec. of the New-York Law (1 R. L. 186) under which this

case was decided, corresponds with the 3rd and 4th sections of the stat. 21 James.

In the case at bar the injunction restrained the plaintiff from proceeding on the pluries execution only, in no way affecting or hindering him by its mandate from bringing suit upon the judgment.

When the statute once begins to run, no subsequent disability will restrain it. On this subject the decisions are uniform. Wilkinson on Limit. 51, and the cases there cited. Even insanity has been held not to obstruct its progress. Doe v. Jones, 4. T. R. 301, by Lord Kenyon, Chief Justice. In Demarest v. Wynkoop, 3 John. Ch. Rep. 129, this subject is treated by the late Chancellor Kent in his usual clear and forcible manner. Speaking of cumulative disabilities he says, " The party can only avail himself of the disabilities existing when the right of action first accrued. If disability could be added to disability, claims might be protracted to an indefinite extent of time, and to the great injury and oppression of the country. It would be impolitic as well as contrary to established rule, to depart from the plain meaning and literal expression of the proviso in the statute of limitations."

In the case before us, the bar was complete in September, 1832, and the injunction was not sued out until the November following.

The next point is, that by the stipulation there was a sufficient acknowledgment of the debt to take it out of the statute. For the purpose of determining this point, it does not seem necessary to follow counsel in the history which has been given of the origin and progress of the idea that the effect of the statute might be prevented by a new agreement. In Clementson v. Williams, 3 Pet. Cond. Rep. 38, Chief Justice Marshall says, " they have gone full as far as they ought to be carried."

It was argued in the supreme court of New-York as late as 1833, that the statute of limitations is a defence not favored by the courts. With the exception of the cases alluded to, and to which we shall hereafter have reference, there is no warrant for this idea, though it would seem to have taken strong hold upon the minds of some judges.

It is true, at common law the plaintiff has the liberty to bring his action when he will, and this statute may have been considered to be in restraint of that right, but the great amount of injustice which has been prevented by it, more than counterbalances any supposed infringement of existing rights by its passage.

Lord Holt, Ch. J., said it was one of the best of statutes, and the pleading thereof no disparagement to any body.   Wilmot, J., said it was a noble, beneficial act.   Green *v.* Rivett, 7 Mod. 12; King *v* Walker, 1 Wm. Black. 287.

It has also been said that the statute (on which the security of all men depends) is to be favored.   Green *v.* Rivett.

Lord Kenyon was a strong advocate for the uniform construction of the statutes of limitation, which were, he said, of the greatest import- ance, as they are statutes of repose.   Doe *v.* Jones, 4 T. R. 308.

Mr. Sergeant Williams, in 2 Saund. 64 a, note 6, says, "although it will now and then prevent a man from recovering an honest debt, yet it is his own fault he postponed his action so long." It has the constant effect of shutting out unjust claims, founded on experiments made to take advantage of carelessness or misfortune, on the chance of vouchers being lost or mislaid.   King *v.* Morrall, 6 Price's Exch. Rep. 31, per Garrow, Baron.

Saunders says, the prosecution of actions arising upon contracts not in writing under seal, a long time after they first accrued, was often a great occasion of perjury in witnesses, and oppressive to defendants, and that to avoid this was the object of the statute.

In Clementson *v.* Williams, before referred to, Judge Story says the statute is now considered to be entitled to the same respect with other statutes, and ought not to be explained away.   The policy of the stat- ute, says Ch. Kent, is to quiet possession and extinguish dormant claims.   3 John. Ch. Rep. 139.   To this might we add, that the stat. of James commences with these words: "For quieting of men's estates and avoiding suits, be it enacted," &c.   See copy stat., appendix to An- gel on Lim. p. 3.

It is now, says Greenleaf, regarded by the courts as a wise and bene- ficial law, not designed merely to raise a presumption of payment of a just debt, from lapse of time, but to afford security against stale de- mands, after the true state of the transaction may have been forgotten, or be incapable of explanation by reason of the death or removal of witnesses.   2 Greenl. Ev. sec. 440, p. 354.

This is the language of Mr. Justice Story, in Bell *v.* Morrison, 1 Pe- ters' Rep. 360.

This view of the statute is in accordance with what we conceive to be

the duty of every court, to wit, so to construe it as to give it effect, instead of casting about for an apology to evade it.

We are perhaps not prepared to say with Baron Parke, 14 Mees. & Wels. 744, that a certain train of decisions allowing very slight acknowledgments to take a case out of the statute, was a disgrace to the law; but we can say with him, we trust there is no danger of our falling into the same error. The consequence of this rule of construction is, that whenever a new promise is set up to remove the bar of the statute, it ought to be proved in a clear and explicit manner, either expressly, or by such an unqualified acknowledgment as authorizes its implication. 1 Peters' Rep. 362; Cambridge v. Hobart, 10 Pick. 232; 8 id. 206; 2 id. 368. And although it is held no set form of words is requisite to constitute a sufficient acknowledgment, and that it may be inferred from facts without words, Whitney v. Bigelow, 4 Pick. 10, yet the acknowledgment ought to contain an unqualified and direct admission of a present subsisting debt which the party is liable and willing to pay, and be unaccompanied by any circumstances or declarations which repel the presumption of a promise or intention to pay. A'Court v. Cross, 3 Bing. 329. If there be anything said at the time of the acknowledgment to repel the inference of a promise, the acknowledgment will not take the case out of the statute; the acknowledgment must be consistent with a promise to pay. 3 Serg. & Raw. 211; 9 id. 128; 14 id. 165; 11 John. Rep. 146; 13 id. 288; 15 id. 514. The rule laid down and established by these cases in the courts of Pennsylvania and New York, has received the entire approbation of the supreme court of Massachusetts. 2 Pick. 368; 4 id. 110; 8 Mass. 133; 13 id. 453. In this last case the court held that the vote of a town to settle all disputes with the plaintiff did not amount to an admission that anything was due. See also 5 Pet. Cond. Rep. 480; 3 Greenleaf 97; 4 id. 41, 159.

Any other course would open all the mischiefs against which the statute was intended to guard innocent persons, and expose them to the dangers of being entrapped in careless conversations, and betrayed by perjuries. This is the conclusion which the supreme court of the United States came to in the case of Bell v. Morrison, after the question had been before the court in Clementson v. Williams, and after a deliberate examination of all the authorities, English and American,

when the case of Wetzell *v.* Bussard, 11 Wheaton 309, was before them. They say, we adhere to the doctrine thus stated, and think it the only exposition of the statute which is consistent with its true object and import.

This conclusion is upon the principle that the acknowledgment or promise is deemed a new contract, springing out of and supported by the original consideration. Mr. Justice Story's argument is, that the acknowledgment revives the debt, that its revival supposes it once extinct, and that the act which revives it is what essentially constitutes its new being and is inseparable from it. It stands not by its original force, but by the new promise, which imparts vitality to it. Proof of the latter is indispensable to raise the *assumpsit* on which an actio n can be maintained. It was this view of the matter which first created the doubt whether it was not necessary that a new consideration should be proved to support the promise, since the old consideration was gone. That doubt has been overcome, and it is now held that the original consideration is sufficient, if recognized, to uphold the new promise, although the statute cuts it off as a support for the old. What, indeed, would seem conclusive on this subject is, that the new promise, if qualified or conditional, restrains the rights of the party to its own terms, and if he cannot recover by those terms he cannot recover at all.

This position is well sustained by reference to authority, and is to us perfectly satisfactory, as being the true exposition of the principle upon which cases of this character should be decided.

In Bell *v.* Morrison, the question was presented by a bill of exceptions upon error to the opinion of the circuit court, in excluding certain evidence tending to show a new promise, from the consideration of the jury; and one point raised was, whether the evidence so excluded was competent in point of law, to have been left to the jury to infer a promise sufficient to take the case out of the statute of limitations. Such we apprehend is the inquiry here: can we from the facts stated in this replication legally infer a sufficient promise for the purpose?

We could the better determine how far this stipulation is to produce the effect contended for, if the nature and object of the bill were more fully stated in the replication. So far as does appear, it would seem to have been solely for the purpose of the injunction to stay proceedings on the *pluries* execution, but upon what statement of facts is not shown.

It cannot be inferred from the stipulation to take and state an account, that a decree for the payment of any balance was intended by the parties, unless the stipulation was to have the effect of a cross bill, which cannot be insisted; and any such presumption, if it could arise, is rebutted by the other portions of the stipulation, which reserves to the defendant here the right (in the law court we suppose) to set aside the execution, which was antecedent to the *pluries* execution, and reserving to the plaintiff the right to amend "the said executions and the returns thereto, or any irregularity in issuing the same."

It is difficult to give any meaning to this language, except upon the supposition that the plaintiff retained the right to proceed upon the judgment in the law court, if he could. It must not be forgotten, however, that this is accompanied by a claim for the amount of incumbrances upon certain property in the bill mentioned, and of set-offs against the judgment It is true the amount of these does not appear. That amount was to be ascertained by the master; whether more or less than the judgment cannot be known, nor what disposition is to be made of the case in chancery in either event. The stipulation is silent as to that.

But is there, in all this, any acknowledgment of present indebtment? It is an admission that a judgment had been rendered, but at the same moment the party insists upon a counter claim. He had filed a bill to get rid of an execution upon the judgment. The object of the bill had so far been accomplished: the execution was set aside by the stipulation, and the injunction dissolved, or agreed to be dissolved; for all practical purposes it might be considered as dissolved; and if the plaintiff could claim that the stipulation to submit the matter to the court of chancery is sufficient, from which to presume a promise to pay any balance which might in that court be found due to him, the answer to that is, that no such determination has been had. The bill appears by the replication to have been dismissed, and the contingency has never happened.

We cannot perceive in the stipulation any agreement on the part of the defendant to waive any benefit to arise from the running of the statute of limitations. It appears to have been made under such circumstances, and contains such an assertion of a counter claim, as to repel any presumption of a promise to pay to be raised from these facts.

Ten Eyck *v.* Wing.

Although we are not by the stipulation enabled to see clearly what was the object of the parties, yet there is no ambiguity in the language used, so as to make a reference to a jury necessary. Lloyd *v.* Maund, 2 T. R. 760. But if we could decide this point for the plaintiff, has not the claim been again barred before the commencement of this suit, which was instituted on the 27th day of May, 1846?

Upon the argument, a labored and ingenious attempt was made to sustain the position, that the injunction was not in fact dissolved until the determination of the suit in the April term, 1846, of the chancery of the state; but it has failed to convince the minds of this court, when placed in opposition to the language and terms of the stipulation. The replication states that it was agreed that the injunction *be* dissolved, that the pluries execution be set aside, and that an order be granted by any judge of the supreme court, during the then vacation, to that effect.

If we admit that this order was necessary to perfect the record, still no court of chancery would ever punish for disobedience to its writ, after the existence of such an agreement was made known.

Again: it does not appear the injunction was for any purpose other than to restrain proceedings upon the pluries execution. That execution was by the stipulation set aside. There was no longer anything as the subject of the injunction, and it was not possible to incur a contempt in reference to it.

It was, however, strongly insisted, that if the injunction was dissolved by the stipulation, still the plaintiff could not proceed at law upon his judgment, either by execution or by action, for the reason that he had stipulated to await the decision in chancery before proceeding upon the judgment; that the defendant had by the stipulation all the benefit of the injunction, until the case was disposed of in chancery; and that it was designed to stand in place of the injunction, insomuch that the plaintiff could not proceed at law.

We do not thus look upon the stipulation; but if this was the effect of it, can the plaintiff complain of the consequences of his own act? Why make the stipulation, instead of moving to dissolve the injunction? By his own voluntary act he consented to the delay, and cannot now object that he was bound to observe his own agreement.

So far as we are able to discover, the plaintiff stipulated only to sub-

Ten Eyck *v.* Wing.

mit the claim of the defendant, whatever it was, to the court of chancery, reserving his rights on the judgment in the court of law. If he has construed the terms of the stipulation differently, and wasted his time in the court of chancery, instead of following his remedy at law, it is not the fault of the defendant.

We shall now briefly notice some of the cases referred to by plaintiff's counsel; and first Quantock *v.* England, 5 Burr. 2628. The statute was not pleaded in that case, but the action being by the assignees of a bankrupt to recover a debt due to him, and about which there was no dispute, a question was raised as to the validity of the commission, because the debts of the petitioning creditors were above six years' standing before the sueing of the commission.

The bankrupt appeared and was examined by the commissioners, and was by them declared a bankrupt. This case was decided in 1770.

It had long before this been determined that a party intending to avail himself of the statute must plead it. 1 Saund. 283, n. 2.

The argument of the counsel for the defendant in that case was, that a creditor who had suffered six years to elapse was precluded from applying for a commission. He said this was within the intent and spirit of the statute.

The court unanimously determined that the objection lay only in the mouth of the bankrupt himself, and that a third person could not make the objection.

Lord Mansfield says the statute only takes away the remedy, and the defendant may either take advantage of the statute or he may waive that advantage. This is the principle upon which a new promise is allowed to be proved. What follows was not necessary to the decision of the case. His lordship says, " In honesty he (the bankrupt) ought not to defend himself by such a plea, and the slightest word of acknowledgment will take the case out of the statute."

It is true, for a long period the courts were not inclined to favor this plea, and the Court of Common Pleas in England refused to set aside a judgment to let in a plea of the statute, or to allow the defendant to add it to the general issue, saying it excluded the merits. 2. Wils. 253; 2 T. R. 390. But in 3 T. R. 124, the King's Bench refused to set aside this plea where the defendant was under an order to plead issuably; and in a subsequent case, 1 Bos. & Pul. 228, the Common

Pleas refused to restrain a defendant from pleading the statute on setting aside an interlocutory judgment, for the plea was not necessarily unconscientious.

Next is the case of Sluby v, Champlin, 4 John. Rep. 461. Yates, J. in deciding the case says, " It is now generally received as law, that if a party acknowledge a debt unpaid, it is such a waiver of the protection of the statute as to repel the presumption of payment, being a recognition of the former liability." This is upon the supposition that the only presumption raised by the lapse of time is payment, which we have seen is much too narrow a view of the " true object and import of the statute,"

Heylin v. Hastings, 1 Salk. 29, is the only case referred to, which was a case of a conditional promise, as "prove it and I will pay."

Smith v. Ludlow, 6 John. Rep. 267, next referred to, is decided on the strength of Sluby v. Champlin. The only question, however, was as to the sufficiency of the acknowledgment of one partner to charge his copartner after a dissolution.

White v. Potter, 1 Coxe, (N, J,) 159, decided in 1793, was assumpsit on a note. To meet the plea of the statute, the plaintiff proved that the defendant admitted he had had the money, but said that the plaintiff, as paymaster of the regiment to which he belonged, had received his pay and retained it to the amount of the note. This was held sufficient to take the case out of the statute. The case is very briefly reported, and the opinion of the court contains nothing more than their decision, without any statement of the principle upon which they make it, or any reference to authority.

In the case of Owen v. Wolley, Bull. N. P. 168, in an action by an executor for money had and received to the use of his testatrix, the defendant was proved to say, "I acknowledge the receipt of the money, but the testatrix gave it to me." Mr. Baron Clive held that such an acknowledgment could not amount to a promise to pay, when he insisted he was entitled to retain it, and directed the jury to find for the defendant. Neither do we understand how a promise to pay can be implied from an acknowledgment of the defendant of the receipt of the money, when he at the same time says the plaintiff has paid himself.

The terms of the acknowledgment must all be taken together, so that

it may be seen whether, upon the whole, the party intended distinctly to admit a present debt or duty. 2 Greenl, Ev. 357.

The next is Cole v. Saxby, 3 Esp. N. P. 160. The proof was, the defendant said he would pay his part when he was able. Lord Kenyon held this to be a conditional promise, and that it was incumbent on the plaintiff to show his ability, and that it was sufficient to give evidence of ability from ostensible circumstances and appearances in the world.

In Wells v. Horton, 12 Eng. C. L. R. 186, also referred to, the defendant's testator was in his life-time indebted to the plaintiff, and he stated to plaintiff's attorney that he had made provision by his will, and had directed his executors to pay it at his death. He died without making such provision. Held that the promise was good, and that the statute of limitations did not apply.

Clark v. Hougham, 9 Eng. C. L. R. 49, shows that an express promise is not necessary, but may be implied from an acknowledgment.

12 Wendell 490 is not a case under the statute, but one where the question arose as to what is sufficient at common law to rebut a presumption of payment arising from lapse of time. We think it a mistaken view of the statute to suppose it was only intended to limit and fix the period when, from lapse of time, a court would presume payment.

Mosher v. Hubbard, 13 John. Rep. 512, was a case where there was evidence of the admission of the debt, being the amount of an order drawn by the defendant in favor of the plaintiff on a third person more than six years before, and which he admitted had not been paid.

Montgomery v. Hernandez, 12 Wheaton 129, is referred to to show that any delay occasioned by the debtor suspends the statute. The language of the court is, "The right of action was suspended during the pendency of the appeal in this court, and during such suspension the statute of limitations did not run against him." The action was upon a marshall's bond, to recover the proceeds of a vessel and cargo sold by him under an order of the district court. The law directs the money to be deposited in the name and to the credit of the court, and provides that money so deposited shall not be drawn out of bank without the order of the court. The court say, "It was only a partial execution of the precept of the court to sell the vessel and cargo; its mandate was not faithfully performed until the proceeds were brought into

court by him, in order to be deposited according to law, or until he paid it over to Hernandez as directed by the final decree of the court. The marshall's failure to bring in the money or to pay it over to Hernandez & Co. was a violation of his duty and a breach of his bond."

" The supreme court of the state (Louisiana) decided, that although the breach of the condition of the bond took place more than six years before the institution of the suit, yet the plaintiff's right of action did not accrue until within the six years. This court perfectly accords in opinion with the supreme court of the state."

This fully explains what is meant by the right of action being *suspended.*

Next comes Webber *v.* President of Williams College, 23 Pick. 302. The action was upon a promissory note. The defendant, before the expiration of six years from the time the debt accrued, proposed to the plaintiff, that if he would forbear bringing his action at that time, he should continue to have the same rights, for one year more, that he then had. The plaintiff answered that he would not consent thereto; but did not, in fact, commence his action until the six years had expired. Upon these facts Ch. Jus. Shaw says: " The court are of opinion that this was a sufficient compliance with the defendants' offer; that they are bound by it, and that it is a good waiver of the statute of limitations." And this is all that is said. Whether the court held this to be sufficient evidence of a new promise, or upon what principle the point was thus decided, does not further appear, though we suppose upon the ground of the agreement by the plaintiff not to avail himself of the statute. The case was decided against the plaintiff upon another point.

In Mathews *v.* Philips, 2 Salk. 425, it is determined that the commencement of an action in an inferior court will prevent the statute from attaching. So, too, the commencement and continuance of a suit in K. B. will save a case out of the statute in a proceeding in bankruptcy. 7 Eng. C. L. R. 415. So, too, the issuing and return of a writ *non est inventus*, is sufficient to avoid the statute. 2 Burr. 950. It shows that the plaintiff had rightfully and legally pursued his right. But we see no analogy between these cases and a case where the statute begins to run from the date of the judgment, and the plaintiff has pursued no remedy *by suit*, but only by taking out execution. If he is unable to

collect on execution, he must take care and renew his judgment by suit before the statute attaches.

In Wilcocks v. Huggins, 2 Stra. 907, the question was, within what time an executor of an executrix should bring an action after her death, she having commenced a suit which was pending when she died, and the six years having then expired. It was held that four years was too long a delay. The court say, if the second executor had been retarded by suits about the will or administration, and had shown it in pleading, it would have been otherwise, because then the neglect would be accounted for. The court also say, the most time that had ever been allowed is a year, and that within the equity of the statute, which gives the plaintiff a year to commence a new action where the judgment is arrested or reversed, but said they would not go a moment further, for it would let in all the inconveniences the statute was intended to avoid.

We have already shown, that the only question in such case is, whether the second suit is brought within a reasonable time, and that by analogy the statute is the best guide on the subject. This only applies to a case where the party has himself commenced a suit, which has failed from some cause beyond his control.

We are referred to Brown's Executors v. Putney, 1 Wash. R. 302. Counsel for defendant argued, that the clause in the act of limitations which allows the plaintiff one year to re-commence his action, is extended by an equitable construction to all cases where the *plaintiff gets out of court.* Counsel in that case were mistaken, or we are, as we have shown. Wilcocks v. Huggins is referred to by the court, and one year recognized as the time within which the suit must be brought.

In 8 Vt. Rep. 90, it is said the statute does not run upon a judgment while the judgment debtor is imprisoned on the execution, but begins to run from the time of his discharge by taking the poor debtor's oath. We have not the case, but the obvious reason we suppose for this is, that the right of action does not accrue until the defendant's discharge.

Wilson v. Koontz, 7 Cranch 202, is a case in which the only question was, at what time the right of action accrued.

In Pendleton v. Phelps, 4 Day 476, the statute was held not to have run upon petitioner's demand against the estate of a deceased partner, because it was not a *claim* against the estate until after the insolvency

of the survivor, within the meaning of the statute of Connecticut requiring the *claims* of certain creditors to be exhibited to executors within two years. The right of action had not accrued until the insolvency, which was within two years.

We have thus, as fully as was in our power, considered all the points made by the plaintiff in favor of his replication.

The facts stated neither show that the plaintiff was under any of the disabilities mentioned in the statute, nor that the defendant had either expressly promised to pay the debt, or had made such on acknowledgment as contained an unqualified and direct admission of a present subsisting debt, which he was liable and willing to pay, or that he had waived the benefit of the statute.

There is no pretence that there was any fraudulent concealment of the cause of action by the defendant.

We think the defendant entitled to judgment on the demurrer, and direct that it be so certified to the circuit court for the county of Wayne.

*Certified accordingly.*