ISAAC McKISSON AND MARY WAGGONER v. IRA DAVENPORT ET AL.

*Mortgage—Foreclosure—Statute of limitations—Equity.*

1. Act No. 204, Laws of 1879 (How. Stat. § 8709), in so far as it bars mortgage foreclosures, at law or in equity, unless commenced within fifteen years from and after the maturity of the mortgage debt, or within a like period after the last payment was made thereon, is not *retroactive.*

2. The proviso to Act No. 204, Laws of 1879 (How. Stat. § 8709), which excepts from its operation mortgages which have been due, or the last payment upon which was made, fifteen years or more prior to the passage of the act, and bars suits or proceedings for their foreclosure unless commenced within five years after the act took effect, provides for a reasonable time within which to commence such suits or proceedings.[1]

3. The following general propositions are summarized from the opinion of Chief Justice CHAMPLIN:

*a*—This Court has repeatedly recognized the doctrine that while the statute of limitations is to be favorably regarded by the courts, as being one of repose as well as of presumption of payment, affording security against stale claims, yet injustice must not be done nor the statute defeated by an undue strictness of construction, but the legislative intent must be carried into effect; citing *Ten Eyck v. Wing,* 1 Mich. 40; *Jewett v. Petit,* 4 Id. 508; *Jenny v. Perkins,* 17 Id. 28; *Gorman v. Circuit Judge,* 27 Id. 138; *Palmer v. Palmer,* 36 Id. 487; *Toll v. Wright,* 37 Id. 93; *Proctor v. Bigelow,* 38 Id. 282; and it has been also held that such statutes must be construed to operate *prospectively* only, unless their terms clearly indicate a different intent; citing *Harrison v. Metz,* 17 Mich. 377; *Ludwig v. Stewart,* 32 Id. 27; *Price v. Hopkin,* 13 Id. 318; *Stambaugh v. Snoblin,* 32 Id. 296; *Smith v. Auditor General,* 20 Id. 398.

*b*—Every suitor must have a reasonable time in which to commence an action to enforce his rights, and it is for the Legislature to provide a general rule applicable to all cases falling within a class, and not for the judiciary to declare what is or should be a reasonable time varying with the circum-

---

[1] See *Kingman v. Sinclair,* 80 Mich. 427.

stances of each case as it arises; citing *Ludwig v. Stewart*, 32 Mich. 27; *Parsons v. Circuit Judge*, 37 Id. 290.

Appeal from Eaton. (Hooker, J.) Argued October 30, 1890. Decided November 14, 1890.

Bill to remove a cloud caused by mortgages claimed to be outlawed under Act No. 204, Laws of 1879, and to set aside statutory foreclosures of the same. Answer claims the benefit of a cross-bill, and prays that the foreclosure proceedings be declared valid. Decree dismissing bill, and granting affirmative relief prayed for in answer, affirmed. The facts are stated in the opinion.

*H. A. Shaw*, for complainants.

*Boudeman & Adams*, for defendants.

[The points of counsel are stated in the opinion.— REPORTER.]

CHAMPLIN, C. J. This is a bill in equity, but there is no equity in the bill.

Complainants allege that they are joint owners of the N. W. ¼ of section 25 in township 2 N., range 3 W; that, on September 1, 1862, Ira Davenport conveyed the E. ½ of the above-described land to John W. Reed, and took back a purchase-money mortgage for $440 secured upon the land sold; and that on the same day the complainant Isaac McKisson purchased from said Ira Davenport the W. ½ of the N. W. ¼, and, to secure a part of the purchase money, gave to said Ira Davenport a mortgage upon the land purchased by him for $440,—both mortgages being payable three years from the date thereof; that on October 6, 1864, John W. Reed conveyed to Edgar J. Reed; and on February 28, 1866, McKisson purchased the E. ½ of the N. W. ¼ from Edgar J. Reed, taking a deed subject to the mortgage to Davenport.

The bill then sets up several conveyances by the way of deed and mortgage, those made by complainant McKisson conveying subject to the two mortgages to Davenport, until, in 1873, McKisson again became the owner of the quarter section. The bill shows that all of his title and right to the land was derived from Ira Davenport, and is based upon the two conveyances first above mentioned. Complainants state that Davenport's title was based upon several tax titles from the State of Michigan, but nowhere state that McKisson acquired the title from the owner of the original title, while the answer and the proofs show that Davenport was at the time of the conveyances to McKisson and to Reed the owner of the original title, and the proofs further show that McKisson knew that fact long before the bill in this case was filed; and yet complainants charge that there was a question about the title conveyed by Davenport because of the original title outstanding.

Complainants further state that one John M. Corbin acquired three tax titles on the land, for the years 1876, 1877, 1878, and McKisson induced his wife (now deceased), the mother of complainant Mary Waggoner, to buy such tax titles, and Corbin executed a quitclaim deed to her for $500, dated April 12, 1880; and that he, to secure his wife the payment of $1,800, executed to her a trust-deed upon the undivided half of the 160 acres. This deed was made expressly subject to the Davenport mortgages, and to her tax deed. The purchase of these tax titles did not create an adverse title in McKisson or his wife. It was merely the payment of taxes which he, as holder of or interested in the legal title procured from Davenport, was in duty bound to pay. But if otherwise, the tax titles so purchased by Corbin were by the proofs introduced in the case shown to be void.

The bill charges that these mortgages belonging to the

estate of Ira Davenport are a cloud upon complainants' title, because no interest has been paid upon either of them since September 1, 1867, and that they should be presumed to have been paid, and be canceled and discharged of record. And complainants rely upon the statute passed by the Legislature of this State in 1879, which reads as follows:

"No suit or proceeding shall be maintained to foreclose a mortgage on real estate, either at law or in equity, unless commenced within fifteen years from and after such mortgage shall become due and payable, or within fifteen years after the last payment was made on said mortgage: *Provided, however,* That this act shall not be construed to apply to mortgages which have been due fifteen years or more, or the last payment upon which was made fifteen years or more, prior to the passage of this act, but, in all such cases, no suit or proceedings shall be maintained to foreclose the same unless commenced within five years after this act shall take effect." How. Stat. § 8709.

The proceedings to foreclose the mortgages in question were commenced on May 16, 1887, and this bill was filed in February following. The mortgages became due and payable September 1, 1866, and the last payments were made September 1, 1867. It will therefore be seen that the proviso in the statute does not apply to these mortgages. If the time when the statute should begin to run be fixed at the date when the mortgages were payable, then the time would expire and be barred September 1, 1881; and if the time runs from date of last payment, the action, under the statute, would expire September 1, 1882. The complainants insist that this act is a bar to foreclosure, and defendants contend that the statute ought not to be construed as retroactive, except as to the cases mentioned in the proviso, which expressly applies to mortgages which have been past due more than 15 years, and no payments made upon them within 15 years; that, as to mortgages given within that time,

and before the passage of the act, they are left to be controlled under the law and decisions which existed at the date of the passage of the act.

This Court has repeatedly recognized the doctrine that while the statute of limitations is to be favorably regarded by the courts, as being one of repose as well as of presumption of payment, affording security against stale claims, yet injustice must not be done by an undue strictness of construction, nor the statute be defeated by such construction, but the legislative intent must be carried into effect. *Ten Eyck v. Wing,* 1 Mich. 40; *Jewett v. Petit,* 4 Id. 508; *Jenny v. Perkins,* 17 Id. 28; *Gorman v. Judge,* 27 Id. 138; *Palmer v. Palmer,* 36 Id. 487; *Toll v. Wright,* 37 Id. 93; *Proctor v. Bigelow,* 38 Id. 282. We have also held that statutes of limitation must be construed to operate prospectively only, unless their terms clearly indicate a different intent. *Harrison v. Metz,* 17 Mich. 377; *Ludwig v. Stewart,* 32 Id. 27; *Price v. Hopkin,* 13 Id. 318; *Stambaugh v. Snoblin,* 32 Id. 296; *Smith v. Auditor General,* 20 Id. 398.

Every suitor must have a reasonable time in which to commence an action to enforce his rights, and it is for the Legislature to provide a general rule applicable to all cases falling within a class, and not for the judiciary to declare what is or should be a reasonable time varying with the circumstances of each case as it arises. Important legal and property rights depend upon the rule within which such right must be asserted, or, failing to do it, will be lost; and the necessity of a fixed, certain, and definite rule established by legislative authority is manifest. *Ludwig v. Stewart,* 32 Mich. 27; *Parsons v. Judge,* 37 Id. 290. The proviso of the act does provide for a reasonable time in all cases where the debt has been due and no interest paid thereon for 15 years prior to the act taking effect. But it has entirely failed to fix any

period as a reasonable time in cases where the mortgage debt has matured within the period of 15 years previous to the act taking effect. The law took effect August 29, 1879. A mortgage maturing August 28, 1864, upon which no payment of interest had been made thereafter, would not be barred until August 28, 1884. A mortgage maturing August 31, 1864, would be barred August 31, 1879, or one day after the act took effect. No one would say that this is a reasonable time, and yet such would be the result in such a case, if the act is to be given a retroactive effect.

In the case of these two mortgages, which complainants pray to have canceled and discharged, 12 years had already elapsed since the payment of interest when the act took effect. Did the Legislature intend that actions to foreclose those mortgages should be barred in three years, when, if no payment of interest had been made, and they had matured three years or six years earlier, they would not have been barred in five years from the time when the act took effect? The Legislature could not have intended the older and more stale the instrument the more favorable would the law be in affording a remedy. And can it be doubted, since the Legislature fixed a reasonable time to enforce such stale mortgages, they would, if they intended the act to apply to existing mortgages which had not matured at the passage of the act, or had matured within the 15 years prior thereto, have fixed a reasonable time after the passage of the act, if they matured within five years from its taking effect, in which to foreclose? Would not the Legislature have said that all mortgages maturing within 15 years, and more than 10 years, before the time the act took effect, might be enforced by foreclosure within 5 years after the act took effect, and if not so enforced would be barred, and no action be maintained to foreclose them, thus making the

rule uniform? Or at least they would have provided a definite rule. The statute construed in *Harrison v. Metz,* 17 Mich. 377, was as positive in its language as the enacting clause of the one under consideration, and this Court held it to be prospective only. After that decision was rendered, the Legislature amended the statute so as to make it apply to judgments theretofore rendered, and this amendment was construed in *Parsons v. Judge,* 37 Mich. 287, 289. The enacting clause of this statute must be held to speak from the time the act took effect, and to apply only to mortgages executed in the future. The mortgages mentioned in complainants' bill, owned by the executors of Ira Davenport, were subject to the rules governing such instruments at the time the act of 1879 was passed.

The mortgage debt, and the lien of the mortgages upon the land, as security therefor, have always, to about the time foreclosure proceedings were commenced, been recognized and acknowledged by complainant McKisson. These acknowledgments have been in writing, and at two different times after he and the parties owning the mortgages had, as a matter of compromise, agreed upon the amount which they would accept and receive from him in full discharge of the debt and mortgages, he agreed to pay them the amount so agreed upon at a designated time in the future. This was as late as 1883 and 1884. But he has neglected and failed to make such payment. These promises were in writing, and the debt and liens were continued thereby upon a sufficient consideration, and the plea of the statute of limitations cannot avail the complainants as a defense to such mortgages.

Complainants do not come into court with clean hands. After years of delay, at the special instance and request of McKisson, after repeated promises to pay the debt secured by the mortgages, after negotiations in which he

promised, if defendants would take less than the amount due them by more than $200, and after promising to pay such amount agreed upon within 90 days, and neglecting to fulfill such promise, he is not entitled to be relieved from all liability, and the land discharged of all liens for the debt, through the interposition and assistance of a court of equity, which is guided by the maxim that "he who asks equity must do equity."

We are satisfied that the decree appealed from is correct, and it is affirmed, with costs of both courts. The record will be remanded to the court below for execution of the decree.

The other Justices concurred.